Citation Nr: 1434267 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 03-09 166 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to service connection for a left knee disorder, including as due to a service-connected right knee chondromalacia patella.


WITNESSES AT HEARINGS ON APPEAL

The Veteran and a friend


ATTORNEY FOR THE BOARD

Kristy L. Zadora, Counsel


INTRODUCTION

The Veteran had active duty service from June 1963 to June 1967.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2001 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

The Veteran testified before a Decision Review Officer in a May 2002 hearing and before an Acting Veterans Law Judge at a Central Office hearing in June 2003. Hearing transcripts have been associated with the Veteran's claims file. The Board notes that the Acting Veterans Law Judge who conducted this June 2003 hearing has since retired from the Board. The Veteran was informed of her retirement and offered another hearing before a different Veterans Law Judge in a May 2012 letter. The Veteran declined another Board hearing in July 2012. See 38 U.S.C.A. § 7107(c) (West 2002); 38 C.F.R. § 20.707 (2013).

The Board remanded the instant matter in May 2004, April 2006 and July 2008.

In June 2010, the Board denied the instant matter. The Veteran appealed the Board's denial of his claim to the United States Court of Appeals for Veterans Claims (Court). In a December 2011 Memorandum Decision, the Court vacated the Board's decision as to the instant matter and remanded it to the Board for further development and adjudication.

The Board again remanded the instant matter in August 2011, May 2013 and October 2013. As will be discussed herein, the Board finds that the agency of original jurisdiction (AOJ) has substantially complied with the remand orders with regard to the claim for service connection and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 

In its October 2013 decision, the Board remanded a claim for a higher initial rating for major depressive disorder to allow a statement of the case to be issued. A statement of the case addressing such claim was issued in March 2014. However, the Veteran did not perfect his appeal as a timely substantive appeal is not contained in the claims file or the Virtual VA or Veteran Benefits Management System (VMBS) paperless files. Further, this issue was not certified to the Board by the AOJ for its consideration. Therefore, this issue is not properly before the Board and will not be addressed in the decision herein. See 38 C.F.R. § 20.200 (2013).

The Board also notes that, in April 2003, the Veteran submitted an Appointment of Veterans Service Organization as Claimant's Representative (VA Form 21-22) appointing The American Legion as his power of attorney (POA). In April 2014, The American Legion revoked their representative of the Veteran. The Board recognizes this change in representation.

As a final preliminary matter, the Board notes that, in addition to the paper claims file, the Veteran also has electronic Virtual VA and VBMS paperless files. A review of the documents in Virtual VA reveals VA treatment records dated through July 2014 as well as a July 2014 Aid and Attendance examination report; such treatment records dated through March 2014 were considered by the AOJ in the March 2014 supplemental statement of the case. The Veteran has not waived AOJ consideration of such evidence. However, such documents are not relevant to the claim on appeal and such a waiver is not required. 38 C.F.R. § 20.1304(c) (2013). The remaining documents in Virtual VA and VBMS are either duplicative of the evidence in the paper claims file or are irrelevant to the issue on appeal. 


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate the claim herein decided have been accomplished.

2. A left knee disorder is not shown to be causally or etiologically related to any disease, injury, or incident during service, and was not caused or aggravated by a service-connected right knee disorder and arthritis did not manifest within one year of the Veteran's discharge from service.


CONCLUSION OF LAW

A left knee disorder was not incurred in or aggravated by the Veteran's active duty military service, may not be presumed to have been incurred in or aggravated by such service, and is not proximately due to or the result of a service-connected right knee disorder. 38 U.S.C.A. §§ 1101, 1110, 1112, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1).

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the Court held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) veteran status; 2) existence of a disability; 3) a connection between a Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable AOJ decision on the claim for VA benefits. 

In the instant case, the Board finds that VA has satisfied its duty to notify under the VCAA. Specifically, a May 2004 letter advised the Veteran of the evidence and information necessary to substantiate his claim for service connection for a left knee disability on a direct basis while an August 2008 letter advised him of the evidence and information necessary to substantiate his claim for service connection on a secondary basis. Additionally, an April 2006 letter advised him of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman. While these letters were provided to the Veteran after the initial unfavorable decision in September 2001, his claim was later readjudicated in the May 2009 supplemental statement of the case. See Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007); (Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

Further, the Veteran has received all essential notice, has had a meaningful opportunity to participate in the development of his claim and is not prejudiced by any technical notice deficiency along the way. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). Moreover, the Veteran has not alleged or demonstrated any prejudice with regard to the content of any notice. See Shinseki v. Sanders, 129 S.Ct.1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination.) Accordingly, no further action is required with respect to the duty to notify.

Relevant to the duty to assist, the Veteran's service treatment records as well as post-service VA and private treatment records have been obtained and considered. 
A November 2001 response from Baptist Memorial Health Care indicates that they were unable to reproduce the medical records related to the Veteran for the period from 1975 to 1981. In an October 2006 statement, the Veteran reported that he had seen Dr. P. B. for treatment related to his knees from 1968 to 1986 but that he had been unable to locate the physician or obtain any medical records. The Board notes a July 2007 letter from J. H., the Veteran's friend, who indicates that Dr. P. B. is deceased and that his medical records had not been located.

The Veteran has not identified any additional, outstanding records that have not been requested or obtained. In this regard, the Veteran was asked to identify any non-VA providers who had treated him for his claimed left knee disorder and to complete an appropriate authorization form for each such provider in a November 2012 letter. The Veteran did not respond to this letter. The Board emphasizes that "the duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Therefore, the Board finds that VA has satisfied its duty to assist in this regard.

The Board notes that, in January 2013, the AOJ issued a Memorandum making a formal finding of unavailability as to the Veteran's Social Security Administration (SSA) records. The AOJ detailed all of the efforts that were made to obtain such records and concluded that such records are unavailable and that further attempts to obtain them would be futile. In a November 2012 letter, the Veteran was advised that VA had attempted to obtain his SSA records and that the SSA had been unable to locate his medical records. This November 2012 letter also advised him to submit any such records in his possession. To date, he has not done so.

The Veteran was afforded a VA examination in December 2012 in order to adjudicate his claim for service connection and addendum opinions were provided in June 2013 and March 2014. In this regard, the Board notes that the VA examiners offered etiological opinions as to the claimed disorder and based their conclusions on a review of the record, to include interviews with the Veteran and a full examination. Moreover, such opinions offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). As such, the Board finds that the opinions proffered by the VA examiners are sufficient to assist VA in deciding the claim for service connection.

Moreover, based on the foregoing, the Board determines that the AOJ has substantially complied with its remand directives by requesting that the Veteran identify non-VA treatment providers, obtaining updated VA treatment records, attempting to obtain the Veteran's SSA records and obtaining an etiological opinion, as applicable to the instant claim, and, as such, that no further action is necessary in this regard. See D'Aries, supra.

Additionally, in June 2003, the Veteran was provided an opportunity to set forth his contentions during the hearing before a now retired Acting Veterans Law Judge. He also had the opportunity to set forth his contentions during a hearing before a Decision Review Officer in May 2002. In Bryant v. Shinseki, the Court held that 38 C.F.R. § 3.103(c)(2) requires that the RO Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

Here, during the June 2003 hearing, the now retired Acting Veterans Law Judge enumerated the issues on appeal, which included service connection for a left knee disorder. Also, information was solicited regarding the etiology of the Veteran's claimed left knee disorder, to include his allegations that it is related to his military service, and he detailed his in-service knee injury. Therefore, not only were the issues "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. Id. at 497. Furthermore, additional development was undertaken subsequent to the hearing in order to ensure that all necessary evidence was of record. Similarly, during his May 2002 hearing before a Decision Review Officer, the issues on appeal were enumerated and information was solicited regarding the etiology of the Veteran's claimed left knee disorder. As such, the Board finds that, consistent with Bryant, the retired Acting Veterans Law Judge and the Decision Review Officer complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and that the Board may proceed to adjudicate the claim based on the current record. 

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, the Veteran will not be prejudiced as a result of the Board proceeding to the merits of his claim. 

II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. 38 U.S.C.A. § 1112; 38 C.F.R. § 3.304. See also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases, to include arthritis, to a degree of 10 percent within one year, from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

In some cases, service connection may also be established under 38 C.F.R. § 3.303(b) by (a) evidence of (i) a chronic disease shown as such in service (or within an applicable presumptive period under 38 C.F.R. § 3.307) and (ii) subsequent manifestations of the same chronic disease, or (b) if the fact of chronicity in service in not adequately supported, by evidence of continuity of symptomatology. However, the Federal Circuit has held that the provisions of 38 C.F.R. § 3.303(b) relating to continuity of symptomatology can be applied only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. 
§ 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

The Board notes that the provisions of 38 C.F.R. § 3.310 were amended during the pendency of the Veteran's appeal, effective October 10, 2006; however, the new provisions state that service connection may not be awarded on the basis of aggravation without establishing a pre-aggravation baseline level of disability and comparing it to the current level of disability. 38 C.F.R. § 3.310(b). Although the stated intent of the change was merely to implement the requirements of Allen, supra, the Board finds that the new provisions amount to a substantive change to the manner in which 38 C.F.R. § 3.310 has been applied by VA in Allen-type cases since 1995. Consequently, the Board will apply the older version of 38 C.F.R. 
§ 3.310, which is more favorable to the Veteran as it does not require the establishment of a baseline level of disability before an award of service connection may granted. See generally, Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003); VAOPGCPREC 7-2003.

The Veteran asserts that his current left knee disorder is the result of an in-service injury he sustained while playing softball. In the alternative, he alleges that his service-connected right knee disorder caused or aggravated his left knee disorder.

Service treatment records document the Veteran's complaints of right knee pain in September and October 1964 as well as his denial of a definite history of trauma on these occasions. An October 1964 bilateral knee X-ray report indicates that the Veteran had pain and swelling in his right knee from an "old injury six months ago" and found that both of his knees were normal with no evidence of osseous, articular or soft tissue abnormalities. This report also revealed an "incidental finding" in the distal portion of the left femoral shaft of a small cystic lesion near the posteromedial portion of the shaft with a sclerotic margin which was "probably an old burned out" fibrous cortical defect. A May 1967 discharge examination report found the Veteran's lower extremities to be normal and noted that he had denied all other significant surgical or medical history.

Post-service treatment records reflect the Veteran's complaints of left knee pain while running as well as intermittent problems when trying to exercise with the left knee in June 1987. An April 2000 VA left knee X-ray was found to be normal while a May 2000 VA left knee X-ray found degenerative changes at the medial joint space.

A January 2005 VA examination report reflects the Veteran's complaints of injuring his left knee while sliding into a base during a softball game in 1964. He reported having intermittent problems with his knee since that time and that these problems have grown more frequent over the last couple of years. Following a physical examination and a review of the Veteran's claims file, a diagnosis of left knee degenerative joint disease was made. The examiner opined that "to say that this condition is posttraumatic as a result of his injury in 1964 would be mere speculation" and that he did not think that this condition was related to the Veteran's in-service injury.

A December 2006 VA examination report reflects the Veteran's complaints of knee pain since injuring it while playing ball in service and that he did not ever seek treatment for the left knee. Post-service symptoms were reported to include occasional swelling and pain. Following a physical examination and a review of the Veteran's claims file, a diagnosis of left knee mild osteoarthritis was made. The examiner opined that it was "impossible to say" whether the Veteran's arthritis was due to active service as he had no documented injury and that it would be speculation on the part of the examiner to say whether this condition began with any sort of injuries that the Veteran reported as there was no "hard evidence" to prove or disapprove his stated memory. The examiner further reasoned that it was highly probable that the Veteran's left knee arthritis was due to aging and was not related to his service-connected right knee condition.

In a December 2012 VA Disability Benefits Questionnaire (DBQ) report, the examiner opined that it was less likely than not that the Veteran's left knee arthritis was related to active service or any incident. The examiner reasoned that X-rays showed essentially no arthritis in the Veteran's knee and that such minimal degenerative changes were very common in the general population. Further, the examiner reasoned that the Veteran was not diagnosed with any specific bony condition following his injury and it did not require surgery. The examiner concluded that it was more likely that the Veteran's left knee condition was naturally occurring and not posttraumatic. The examiner noted that he had reviewed the Veteran's claims file and had conducted an in-person examination.

A June 2013 VA DBQ report indicates that it was provided based upon the examiner's review of the Veteran's claims file and available records using the Acceptable Clinical Evidence process as the existing medical evidence provided sufficient information on which to prepare the DBQ and such an examination would likely provide no additional relevant evidence. The examiner opined that the Veteran's left knee disorder was less likely than not (less than 50 percent probability) proximately due to or the result of the Veteran's service-connected condition, reasoning that the orthopedic literature revealed no correlation between right knee chondromalacia and left knee osteoarthritis. The examiner further opined that none of the Veteran's other service-connected medical conditions are related to osteoarthritis and that the October 1964 X-ray showing an abnormal left femoral shaft had nothing to do with his left knee osteoarthritis being caused by any sort of knee complaints.

In a March 2014 VA addendum opinion, the VA examiner opined that a right knee condition cannot cause or worsen a left knee condition as such was not medically known to occur. The examiner continued that there was no relationship between the Veteran's left knee arthritis and his other service-connected issues and that his gastrointestinal issues had nothing to do with his knee issues. In addition, while noting the October 1964 X-ray finding of an abnormal left femoral shaft, the examiner opined that there was "no medical explanation" for a connection between the right and left knees, that it was not medically possible for one knee condition to cause a condition on the contralateral side and that the abnormal femoral shaft X-ray has "nothing to do with this." An addendum to this report dated in April 2014 indicates that the Veteran's claims file had been reviewed by another examiner that that there were no changes to the March 2014 opinion.

In a June 2003 hearing, the Veteran provided testimony detailing his in-service knee injury. He also testified that he has favored his left knee over his right knee. He had provided similar testimony in his May 2002 Decision Review Officer hearing.

The Board has first considered whether service connection is warranted on a presumptive basis. However, the clinical evidence of record fails to show that the Veteran manifested arthritis to a degree of 10 percent within the one year following his active duty service discharge in June 1967. In this regard, the first clinical evidence showing such arthritis was in a May 2000 VA left knee X-ray. As such, presumptive service connection as a chronic disease, to include based on continuity of symptomatology, is not warranted. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309.

Based on the foregoing, the Board finds that the preponderance of the evidence is against the Veteran's claim for service connection for a left knee disorder. While the evidence of record shows that the Veteran has current diagnoses of a left knee disorder, to include osteoarthritis, the probative evidence of record demonstrates that such is not related to his service or his service-connected right knee disorder. In this regard, the Board places great probative weight on the opinions of the December 2012, June 2013 and March 2014 VA examiners that the left knee disorder was less likely than not related to service or his service-connected right knee disorder. The examiners reasoned that the Veteran's left knee showed essentially no arthritis and was consistent with minimal degenerative changes that were very common in the general population. The examiners further reasoned that the medical literature did not support a correlation between right knee chondromalacia and left knee osteoarthritis and that such a contralateral relationship was not medically known to occur. Such opinions had clear conclusions and supporting data, as well as a reasoned medical explanation connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. No contrary medical opinion is of record. 

As to the remaining January 2005 and December 2006 VA opinions, the Board finds that they are not entitled to probative weight. The January 2005 VA examiner opined that he did not think that the Veteran's left knee condition was related to his reported in-service injury. However, this opinion was provided without a rationale. See Id. In addition, the December 2006 VA examiner essentially provided no etiological opinion and stated that it was "impossible to say" whether the Veteran's left knee condition was the result of an in-service injury. 

The Board also notes that the Veteran and his friend have contended that the Veteran's current left knee disorder is related to his service. Lay witnesses are competent to provide testimony or statements relating to symptoms or facts of events that the lay witness observed and is within the realm of his or her personal knowledge, but not competent to establish that which would require specialized knowledge or training, such as medical expertise. Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). Lay evidence may also be competent to establish medical etiology or nexus. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). However, "VA must consider lay evidence but may give it whatever weight it concludes the evidence is entitled to" and a mere conclusory generalized lay statement that service event or illness caused the claimant's current condition is insufficient to require the Secretary to provide an examination. Waters v. Shinseki, 601 F.3d 1274, 1278 (2010).

In the instant case, the Board finds that the question regarding the potential relationship between the Veteran's left knee disorder and any instance of his service to be complex in nature. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). While the Veteran is competent to describe the current manifestations of his left knee disorder and to describe his in-service knee injury, and his friend is competent to describe his observations regarding the Veteran's left knee symptoms, the Board accords such statements regarding the etiology of such disorder little probative value as they are not competent to opine on such a complex medical question. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. Brown, 7 Vet. App. 134, 137 (1994). In this regard, the diagnosis of a left knee disorder, to include osteoarthritis, requires the administration and interpretation of diagnostic testing. There is no indication that the Veteran or his friend possess the requisite medical knowledge to perform such testing or interpret their results. Moreover, as will be discussed below, the Board finds the Veteran's statements regarding his purported left knee injury to be not credible. 

Furthermore, the Veteran and his friend have offered only conclusory statements regarding the relationship between his purported in-service left knee injury and his left knee disorder. In contrast, the VA examiners took into consideration all the relevant facts in providing an opinion, to include the Veteran's contended in-service injury as well as the current nature of his left knee disorder. Therefore, the Board accords greater probative weight to the VA examiners' opinions. 

In addition, in adjudicating this claim, the Board must assess not only competency of the Veteran's statements, but also their credibility. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The Board notes that the Veteran has indicated that he had experienced an in-service left knee injury. In weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self-interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498 (1995). In the instant case, the Board finds such statements to lack credibility as they are inconsistent with the other evidence of record and were made under circumstances indicating bias or interest and, therefore, accords no probative weight to such contentions. 

In this regard, the Veteran has alleged that he has suffered from left knee symptoms since service and that he had sustained an in-service left knee injury while playing softball. However, the September and October 1964 service treatment records reflect complaints related to the right knee only as well as the Veteran's denial of a definite history of trauma on each occasion. Further, the May 1967 service discharge examination indicates that the Veteran denied all other significant surgical or medical history. Further, the Board notes that the Veteran reported that he had "never sought treatment for his left knee" in a December 2006 VA examination report. In contrast, in an October 2006 statement, the Veteran wrote that he had received treatment from a private physician for his arthritic knees from 1968 to 1986 but that he had been unable to locate records from this provider. Therefore, the Veteran's current statements, made in connection with his pending claim for VA benefits, that he sustained a left knee injury during service and that he had experienced a continuity of symptomology since service are inconsistent with the contemporaneous evidence and, therefore, are not credible. Consequently, the Board assigns no probative weight to such statements. 

Therefore, the Board finds that a left knee disorder is not shown to be causally or etiologically related to any disease, injury, or incident during service or his service-connected right knee disorder.

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for a left knee disorder. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).







ORDER

Entitlement to service connection for a left knee disorder, including as due to a service-connected right knee disability, is denied.



____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs